**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **THRESA SHUGART,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:12-CV-01705-BK |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 17), this

case has been transferred to the undersigned for a final ruling.  For the reasons discussed herein,

Plaintiff's *Motion for Summary Judgment* (Doc. 22) is **GRANTED**, and Defendant's *Motion for*

*Summary Judgment* (Doc. 24) is **DENIED**.  The Commissioner's decision is **REVERSED AND**

**REMANDED**.

## I.  BACKGROUND[1]

### A.    Procedural History

Thresa Shugart (Plaintiff) seeks judicial review of a final decision by the Commissioner

of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI)

and Disability Insurance Benefits (DIB) under the Social Security Act.  Plaintiff filed her

applications for DIB and SSI in February 2006, alleging that she became disabled in August

2001.  (Tr. 161, 333, 336).  Her claim was initially denied in June 2006 and was denied again on

---

[1] The following background comes from the transcript of the administrative proceedings,
which is designated as "Tr."

1

reconsideration.  (Tr. 203, 207).  An Administrative Law Judge (ALJ) upheld the denial of

benefits in July 2007.  (Tr. 163-75).  The Appeals Council remanded the claim, and the ALJ

denied Plaintiff's claim again in June 2008.  (Tr. 176-95).

Plaintiff filed a separate application for benefits in April 2009, alleging a new onset date

of June 26, 2008 – the day after the last ALJ's decision.  (Tr. 197).  The claim was denied

initially, but was approved on reconsideration with a later onset date of April 23, 2009, when the

Commissioner found that Plaintiff could not complete a work week due to poor memory and a

slow pace.  (Tr. 196-97, 274, 282-85).  Eight months later, the Appeals Council reopened both

the favorable decision and the June 2008 denial to consolidate the claims for a new hearing.  (Tr.

283-87).  In November 2010, a different ALJ held a supplemental hearing and denied Plaintiff

benefits for the entire period from August 2001 through the date of the decision.  (Tr. 13-36, 47).

The Appeals Council denied reconsideration, and Plaintiff now appeals to this Court pursuant to

42 U.S.C. § 405(g), seeking the reinstatement of her benefits dating only from April 23, 2009.

(Tr. 1-3; Doc. 23 at 23-24; Doc. 26 at 4, 7).

**B.**     **Facts**

Plaintiff was 52 years old when she filed her second application for benefits in April

2009.  (Tr. 161).  She has completed high school and three years of college, and she has past

relevant work experience as a cashier, hospital cleaner, and diaper-machine tender.  (Tr. 76-77,

109, 144-45, 410).  As found by the ALJ, Plaintiff has the severe impairments of (1) degenerative

disc disease of the cervical spine; (2) degenerative joint disease of both knees; (3) asthma; (4)

chronic obstructive pulmonary disease (COPD); (5) a history of deep vein thrombosis (DVT) in

the legs and lungs; (6) a history of coagulopathy (a disease affecting the coagulability of the

2

blood) secondary to Coumadin therapy and hematuria secondary to coagulopathy; (7) restless leg syndrome; (8) obesity; (9) depression; and (10) adjustment disorder with depressed mood.[2] (Tr. 19).

Plaintiff's depression and anxiety have contributed to her disability since her alleged onset date of 2001. (Tr. 739). In 2008, Plaintiff was noted to have problems with depression and anxiety and was taking an anti-depressant. (Tr. 984). In February 2009, Plaintiff experienced recurrent depression and anxiety symptoms, and her doctor started her on another anti-depressant. (Tr. 983). In April 2009, Plaintiff went to the emergency room for shortness of breath and chest pain due to anxiety (as she had on several earlier occasions). (Tr. 1026, 1038; *passim* from Tr. 1026-1145). In May 2009, her diagnosis of chronic anxiety was noted and she was prescribed medication for that condition. (Tr. 1151-52). In July 2009, one of Plaintiff's physicians diagnosed her with depression, anxiety, and panic attacks. (Tr. 1201). That same month, Plaintiff was admitted to the hospital for a cardiac arrhythmia, and it was noted that she was very despondent, anxious, and depressed. (Tr. 1208).

In September 2009, state consulting psychiatrist Dr. Susan Thompson assessed Plaintiff's mental impairments dating from February 2009. Dr. Thompson noted that, despite having three years of college education, Plaintiff needed three minutes to spell "world" backwards, and during Plaintiff's interview with the Commissioner's field officer, Plaintiff had problems reading, answering, and remembering, which supported her claim for benefits. (Tr. 1506). Dr. Thompson opined that Plaintiff could not complete a full work week due to her poor memory and slow pace.

---

[2] Medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000), available on Westlaw.

(Tr. 1510). Also in September 2009, Plaintiff's Beck Depression Inventory score was 31, indicating that her depression was in the moderate-severe range. (Tr. 1527).

Following a consultative examination conducted by one of her master's students in September 2009, psychologist Dr. Linda Ludden's report noted that Plaintiff exhibited two symptoms of vascular dementia – memory impairment and disturbance in executive function. (Tr. 1482). Dr. Ludden's report indicated that this disease caused Plaintiff a significant impairment in both social and occupational functioning. (Tr. 1483). The report listed Plaintiff's diagnosis as an adjustment disorder, with mixed anxiety and depressed mood. (Tr. 1486). Even with medication and counseling, it was noted that Plaintiff's prognosis was poor and her condition would not be expected to improve within a year. *Id*.

In November 2009, one of Plaintiff's treating physicians started her on Effexor, an anti-anxiety and anti-depressant medication. (Tr. 1586). The following month, Plaintiff noted that she was still depressed and anxious. (Tr. 1780). Plaintiff continued to complain of depression and anxiety in February 2010, for which she was still taking medication. (Tr. 1680). In October 2010, Plaintiff reported feeling increasingly depressed over the previous 18 months, and the following month it was noted that her speech was depressed and her cognition was impaired. (Tr. 1856-57). Her physician's diagnosis at that time was dementia and depressive disorder. (Tr. 1859).

C.      **The ALJ's Findings**

In December 2010, the ALJ issued his decision. (Tr. 36). At step one, he found that Plaintiff had not engaged in substantial gainful activity since August 2001, the alleged disability onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following "severe"

4

impairments:  degenerative disk disease of the cervical spine; degenerative joint disease of both

knees; asthma; COPD; DVT in the legs and lungs; a history of coagulopathy and hematuria;

restless leg syndrome; obesity; depression; and adjustment disorder.  *Id.*  At step three, the ALJ

found that Plaintiff did not have an impairment or combination thereof that met or medically

equaled a listed impairment for presumptive disability under the regulations.  (Tr. 20).

Next, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to lift

and/or carry up to 20 pounds occasionally and ten pounds frequently; stand and/or walk up to six

hours in an eight-hour workday; and sit up to six hours in an eight-hour workday.  (Tr. 21).

Additionally, the ALJ found that Plaintiff could understand, remember and carry out simple,

unskilled tasks, but not detailed, semi-skilled tasks or complex, skilled tasks.  *Id.*  Thus, the ALJ

found Plaintiff could perform a wide range of unskilled, light work.  *Id.*  At step four, the ALJ

found that Plaintiff could not perform any past relevant work.  (Tr. 34).  Finally, at step five,

upon consideration of a vocational expert's testimony as well as Plaintiff's RFC, age, education,

and work experience, the ALJ found that Plaintiff could perform a significant number of jobs in

the national economy.  (Tr. 35-36).  Therefore, the ALJ concluded that Plaintiff was not

disabled from August 2001through the date of the decision.  (Tr. 36).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C.

§ 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled:  (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing her past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(a)(4), 416.920 (a)(4)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden

shifts to the Commissioner at step five to show that there is other gainful employment available

in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III. ARGUMENTS AND ANALYSIS

Plaintiff argues that the ALJ wrongly rejected the opinions of Dr. Ludden and Dr. Thompson and concluded on his own that Plaintiff had the mental RFC to perform simple, unskilled work. (Doc. 23 at 18-19). Plaintiff asserts that the ALJ's independent medical determinations about her condition and ability to work, without an accompanying interpretative expert opinion, do not constitute "substantial evidence" sufficient to support the ALJ's finding and violate *Ripley v. Chater*, 67 F. 3d 552 (5th Cir. 1995). *Id.* at 19-20. Plaintiff further asserts that the Court should reverse and remand for an award of benefits dating from April 23, 2009. *Id.* at 23-24. In the alternative, she requests reversal and remand of the Commissioner's decision for further proceedings. *Id.* at 25.

Defendant responds that Plaintiff's claim that her mental impairments prevent her from working is undermined by her medical records from 2002-2006, her ability to work periodically from 1998 to 2003, and her activities of daily living in 2006. (Doc. 25 at 10-12). Additionally, Defendant urges that the ALJ was entitled to reject the unsupported medical opinions of (1) Dr. Thompson, who did not examine Plaintiff; and (2) Dr. Ludden, who did not personally examine Plaintiff and whose employee Plaintiff paid for the examination. *Id.* at 13-14. Defendant contends that the ALJ did not err in finding that the medical evidence showed that Plaintiff's mental impairments were mild. *Id.* at 14. In reply, Plaintiff points out that the Commissioner hired and paid Dr. Ludden and her assistant, Mr. Bowles, to assess her mental impairments.

(Doc. 26 at 3).

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the most that a claimant is able to do despite her physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether a claimant can work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Generally, an ALJ should request a medical source statement that describes the types of work a claimant can still perform.  *Ripley*, 67 F.3d at 557.  However, the absence of such a statement is not reversible error if the ALJ's decision is nevertheless supported by substantial evidence.  *Id.*  Reversal is warranted only if the claimant shows that she was prejudiced.  *Id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion.  *Id.*  The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish the effect that condition had on his ability to work. *Id.*  The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.  *Id.* at 557-58.  The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert.  *Id.* at 558 n.27.

8

In this case, the ALJ apparently attempted to compensate for Plaintiff's depression and anxiety when he limited Plaintiff to simple, unskilled work. *See* Tr. 28 (ALJ opinion noting that the Appeals Council's prior determination that Plaintiff's mental impairments did not prevent her from performing simple tasks was well supported by the objective medical evidence); Tr. 32 (noting disagreement with Dr. Thompson's opinion about Plaintiff's inability to work because the other medical evidence of record indicated that Plaintiff's mental impairments were mild). Nevertheless, there is no suggestion in the medical evidence of record supporting the ALJ's determination that Plaintiff can perform such work despite her mental impairments. *Ripley*, 67 F.3d at 557-58. Indeed, Dr. Thompson opined that Plaintiff's depressive symptoms were severe enough to preclude her from working. (Tr. 1510). Additionally, state-appointed psychologist Dr. Ludden found that Plaintiff had significant impairments in her occupational functioning, and her prognosis was poor. (Tr. 1483, 1486). While the ALJ may choose to reject those opinions, he cannot then independently decide the effects of Plaintiff's mental impairments on her ability to work, as that is expressly prohibited by *Ripley*. 67 F.3d at 557-58. Instead, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work activities that Plaintiff could still perform given her impairments. *Id.* at 557.

Thus, assuming *arguendo*, that the ALJ was entitled to disregard Dr. Thompson's and Dr. Ludden's opinions, there is no evidence whatsoever supporting the ALJ's RFC finding at step three that Plaintiff can perform simple, unskilled work. *See, e.g.*, *Williams v. Astrue*, 355 Fed. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC). Accordingly,

9

reversal is required.

The only remaining issue left to decide is whether to reverse and remand for further proceedings before the ALJ or for an award of benefits as Plaintiff requests.  The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  When an ALJ's decision is not supported by substantial evidence, and the uncontroverted evidence clearly establishes the claimant's entitlement to benefits, the case may be remanded with the instruction to make an award of benefits.  *See Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir. 1986).  The record must enable the court to "determine definitively that the claimant is entitled to benefits."  *Armstrong v. Astrue*, 2009 WL 3029772, *10 (N.D. Tex. 2009) (Cummings, J.).

In this case, Plaintiff seeks benefits commencing on April 23, 2009.  Although Defendant cites various medical records which tend to suggest that Plaintiff's mental impairments are not as limiting as she suggests, those records predate her claimed commencement date by three years or more.  *See* Doc. 25 at 10-12 (citing records dated 2002 and 2006).  The medical evidence from April 23, 2009 forward, as detailed above, demonstrates that Plaintiff's mental impairments limit her ability to do even simple, unskilled work.  The two medical experts hired by the Commissioner said as much, and those opinions are supported by the entirety of the medical records.  On this record, the uncontroverted evidence clearly establishes Plaintiff's entitlement to benefits.  *See Taylor*, 782 F.2d at 1298-99.

Further, the case has been pending for seven years, been before an ALJ three times, and

already consists of a nearly 2,000 page record.  Additionally, the Commissioner is seeking

repayment from Plaintiff of $14,000 in allegedly wrongfully awarded benefits that he paid before

reversing his decision *sua sponte*.  (Doc. 23, Exh. A).  Under these circumstances, it would not

serve justice to remand the case for further proceedings.  *See Randall v. Sullivan*, 956 F.2d 105,

109 (5th Cir. 1992) (remanding for an award of benefits where case had been pending for over

eight years, and the ALJ had relied on the wrong medical record in denying benefits); *Jimmerson

v. Apfel*, 111 F.Supp.2d 846, 850-51 (E.D. Tex. 2000) (reversing and remanding for an award of

benefits where the ALJ's decision was not supported by substantial evidence, the case had been

remanded twice before, and the plaintiff's claim had been pending for eight years).

Accordingly, this case is remanded to the Commissioner for an award of benefits in Plaintiff's

favor.  Because the Court is remanding based on the ALJ's error in determining Plaintiff's RFC,

the undersigned need not address Plaintiff's other claim that the ALJ asked an improper

hypothetical question of the vocational expert.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary Judgment* (Doc. 22) and **DENIES** Defendant's *Motion for Summary Judgment* (Doc. 24).  This case is **REMANDED** to the Commissioner with directions that the applications for SSI and DIB be granted and for the computation and payment of an award of benefits beginning April 23, 2009.

**SO ORDERED** on March 13, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

12